IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

KENNETH WILSON,
    Plaintiff,

    v.                                                    Civil No. 3:20cv645 (DJN)

GORDON J. PAINTER, *et al.*,
    Defendants.

## MEMORANDUM OPINION
### (Addressing Motions to Dismiss)

Plaintiff Kenneth Wilson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 1983 against Defendants Gordon J. Painter ("Painter") and Colonel Jeffrey S. Katz ("Col. Katz") (collectively, "Defendants"), alleging that Defendants violated his constitutional rights by falsely arresting him and using excessive force during a traffic stop on March 29, 2019.  Plaintiff also brings claims under state law for assault, battery, false imprisonment, unlawful search and malicious prosecution.

This matter now comes before the Court on the Motions to Dismiss (ECF Nos. 15, 17) filed by Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6), moving to dismiss Plaintiff's claims against them.  For the reasons set forth below, the Court hereby GRANTS Col. Katz's motion (ECF No. 15), and DISMISSES WITHOUT PREJUDICE all claims against him.  Further, the Court hereby GRANTS IN PART and DENIES IN PART Painter's Motion (ECF No. 17).  The Court DISMISSES WITH PREJUDICE Count II (False Arrest), Count V (False Imprisonment), Count VI (Unlawful Search, in violation of Virginia Code § 19.2-59) and Count VII (Malicious Prosecution) of Plaintiff's Amended Complaint (ECF No. 13) as to Painter.

However, the Court DENIES Painter's Motion (ECF No. 17) to the extent that it seeks dismissal of Count I (Excessive Force), Count III (Assault), and Count IV (Battery).  In short, Plaintiff may only proceed against Defendant Gordon J. Painter on Counts I, III, and IV of the Amended Complaint (ECF No. 13).

## I.      BACKGROUND

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Additionally, the Court may consider documents attached to the complaint, Fed. R. Civ. P. 10(c), "as well as those attached to the motion[s] to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt County Memorial Hospital*, 572 F.3d 176, 180 (4th Cir. 2009).  With these principles in mind, the Court accepts the following facts.

### A.      Factual Background

On March 29, 2019, Painter, a Chesterfield County police officer, conducted a traffic stop of Plaintiff's vehicle as Plaintiff traveled west through Chesterfield County, Virginia.  (Amended Complaint ("Am. Compl.") (ECF No. 13) ¶¶ 10, 14.)  Upon approaching Plaintiff's vehicle, Painter asked for Plaintiff's license and registration, but did not immediately advise Plaintiff why Painter had initiated the stop.[1]  (Am. Compl. ¶ 14; Painter's Body Camera Footage ("Body Cam.") (ECF No. 18, Ex. 1) at 00:58-01:02.)  As Plaintiff searched for his information in a fanny pack strapped to his chest, Painter asked "where you heading this evening?" to which Plaintiff

---

[1]      Although Plaintiff did not attach the relevant Body Cam Footage to his Amended Complaint, Plaintiff heavily relies on the footage in setting forth his factual allegations. (Am. Compl. ¶¶ 14-17.)  Painter attached the footage as Exhibit 1 to his Mem. in Supp. of Mot. to Dismiss Officer Gordon J. Painter ("Painter Mem.") (ECF No. 18, Ex. 1).  Consequently, it appears that both parties agree as to the authenticity of the exhibit.

responded that he was "headed home." (Am. Compl. ¶ 15; Body Cam. at 01:05-01:07.) After Painter asked — and Plaintiff answered — questions regarding the location of Plaintiff's home, Painter then inquired into whether the vehicle had recently been involved in a traffic accident that had knocked out the headlights. (Body Cam. at 01:07-01:40.) Plaintiff answered affirmatively. (Body Cam. at 01:30-01:40.) During that time, Plaintiff had opened and searched through the glove compartment to retrieve the vehicle's registration. (Am. Compl. ¶ 15; Body Cam. at 01:19-01:40.) Plaintiff eventually surrendered his information to Painter, whereupon Painter returned to his patrol vehicle to process it. (Am. Compl. ¶ 15; Body Cam. at 01:50-04:12.)

Several minutes later, Painter approached Plaintiff and ordered him to step out of the vehicle. (Am. Compl. ¶ 16; Body Cam. at 04:25-04:28.) Plaintiff responded, "Can I ask why you pulled me over?" as Painter opened the driver's side door and situated himself between the now open door and Plaintiff's person. (Am. Compl. ¶ 16; Body Cam. at 04:25-04:37.) Painter advised Plaintiff that the vehicle's headlight was out and again ordered Plaintiff to exit the vehicle. (Am. Compl. ¶¶ 16-17; Body Cam. at 04:28-04:33.) As Plaintiff sat motionless, Painter quickly repeated the order two more times, with those orders issued within two seconds of each other. (Body Cam. at 04:36-04:38.) As Painter made the fourth and final command, he grabbed Plaintiff's arm and began pulling Plaintiff out of the vehicle. (Am. Compl. ¶ 17; Body Cam. at 04:38-04:40.) Just as Plaintiff began asking Painter to stop, Painter executed a closed-handed strike to Plaintiff's face. (Am. Compl. ¶ 17; Body Cam. at 04:39-04:41.) No more than fifteen (15) seconds elapsed between Painter's first command to exit the vehicle and the closed-handed strike to Plaintiff's face. (Body Cam. at 04:26-04:41.) Painter then extracted Plaintiff from the vehicle and — with the help of another officer who had recently arrived on scene — subdued

and handcuffed Plaintiff without further incident.  (Am. Compl. ¶ 17; Body Cam. 04:41-05:12.)

Painter then brought Plaintiff to his feet and advised him that Painter had ordered Plaintiff out of

the vehicle due to the odor of marijuana.  (Body Cam. at 05:12-05:50.)  Other than Plaintiff, no

one else occupied the vehicle.  (*See generally*, Body Cam.)

After conducting a pat-down search of Plaintiff's person, Painter directed the second

officer to escort Plaintiff away from the vehicle.  (Body Cam. at 05:50-07:02.)  Painter then

searched the vehicle and found marijuana.  (Body Cam. at 13:05-13:21.)  Painter issued a

summons charging Plaintiff with possession of marijuana in violation of Virginia Code § 18.2-

250.1, and released him on his own recognizance.  (Body Cam. at 24:00-26:30.)

Several months later, the Chesterfield County General District Court held hearings on

Plaintiff's motion to suppress the marijuana that Painter had discovered during the March 2019

search.  (Am. Compl. ¶ 27.)  Painter appeared and testified that he had detected the odor of

marijuana upon approaching Plaintiff's vehicle.[2]  (Transcript, Commonwealth v. Wilson, (No.

GC19002917-00) (General District Court of Chesterfield County, Oct. 8, 2019) ("Oct. 8

Transcript") at 5:18-20, 15:20-25.))  Additionally, Painter testified that the Chesterfield Police

Department had taught him to use the distraction technique that he used on Plaintiff here — i.e.,

a closed-handed strike.[3]  (*Id.* at 14:8-25, 15:1-10; Am. Compl. ¶ 22.)  Ultimately, the court

granted Plaintiff's motion, finding that Painter's forcible extraction of Plaintiff from the vehicle

---

[2]     Plaintiff did not attach the transcripts as an exhibit to his Amended Complaint, but did
attach them as an exhibit to the original complaint.  (ECF No. 1.)  Nonetheless, Plaintiff
incorporates the transcripts to the Amended Complaint as "Exhibit B."  (Am. Compl. ¶ 27.)

[3]     This fact constitutes Plaintiff's sole theory of liability against Col. Katz.  Specifically,
Plaintiff alleges that "Col. Katz is the Chesterfield County Chief of Police" and, as such, "is
responsible for the hiring, training, supervision, direction, and conduct of police officers and
administrative staff within the Chesterfield County Police Department."  (Am. Compl. ¶ 12.)

did not constitute a de minimis privacy intrusion within the meaning of *Pennsylvania v. Mimms*, 434 U.S. 106 (1977).  (Am. Compl. ¶ 27; Transcript, Commonwealth v. Wilson, (No. GC19002917-00) (General District Court of Chesterfield County, Oct. 24, 2019) ("Oct. 24 Transcript") at 5:5-25, 6:1-12.))

### B.      Plaintiff's Complaint

On July 28, 2020, Plaintiff filed his original complaint in the Chesterfield County Circuit Court (ECF No. 1).  On August 20, 2020, Defendants removed Plaintiff's complaint to this Court (ECF No. 1), and, on August 27, 2020, filed Motions to Dismiss pursuant to Rule 12(b)(6). (ECF Nos. 2, 4.)  On September 17, 2020, Plaintiff filed his Amended Complaint (ECF No. 13). On September 30, 2020, Defendants filed the instant Motions to Dismiss (ECF Nos. 15, 17), again raising Rule 12(b)(6) and arguing that Plaintiff's Amended Complaint fails to state a claim.

In Count I, Plaintiff raises an excessive force claim under § 1983, asserting that Painter's use of force during the traffic stop proved objectively unreasonable.  (Am. Compl. ¶¶ 28-41.) Relatedly, in Counts III and IV, Plaintiff asserts state law claims for assault and battery, respectively.  (Am. Compl. ¶¶ 52-78.)  In Count II, Plaintiff alleges a false arrest claim under § 1983, and, in Count V, a corresponding false imprisonment claim.  (Am. Compl. ¶¶ 42-51, 68-78.)  With respect to Counts II and V, Plaintiff avers that Painter's arrest of Plaintiff lacked probable cause or any other legal justification.  (Am. Compl. ¶¶ 42-51, 68-78.)  Additionally, Count VI asserts a claim for unlawful search in violation of Virginia Code § 19.2-59.  (Am. Compl. ¶¶ 79-85.)  Finally, Plaintiff brings a claim for malicious prosecution in Count VII, alleging that Painter maliciously initiated a criminal prosecution of Plaintiff without probable cause.  (Am. Compl. ¶¶ 86-92.)

Based on these claims, Plaintiff seeks relief from Painter in his individual capacity and Col. Katz in his "professional and individual capacity." (Am. Compl. ¶¶ 11-12.) Plaintiff requests, among other things, $500,000 in compensatory and punitive damages. (Am. Compl. at 16.)

### C.    Col. Katz's Motion to Dismiss

In response to Plaintiff's Amended Complaint, on September 30, 2020, Col. Katz filed his Motion to Dismiss (ECF No. 15). Col Katz contends that the Amended Complaint fails to allege viable claims against him, in either his official or individual capacity. (Mem. in Supp. of Col. Jeffrey S. Katz's Mot. to Dismiss Am. Compl. ("Katz Mem.") (ECF No. 16) at 3-10.) With respect to the official capacity claims, Col. Katz maintains that Plaintiff does not plausibly allege a municipal liability claim against Chesterfield County, because Plaintiff has not shown that an official policy or custom of the locality caused the alleged constitutional violation. (Katz Mem. at 3-8.) Instead, Col. Katz argues that "Plaintiff alleges a single incident involving a single use of force in light of the specific circumstances at issue during Plaintiff's arrest." (Katz Mem. at 5.)

Regarding the individual capacity claims, Col. Katz argues that Plaintiff has failed to plausibly allege a supervisory liability claim against him. (Katz Mem. at 8-10.) To that end, Col. Katz avers that supervisory liability claims require Plaintiff to show that "Col. Katz had actual or constructive knowledge of the risk allegedly posed by Officer Painter," and that "[t]he Amended Complaint is devoid of any factual allegations concerning" a history of unconstitutional conduct by Painter or any other Chesterfield County police officer. (Katz Mem. at 9.) Finally, Col. Katz moves for dismissal of the state law counts, arguing that sovereign

immunity bars these claims, and that vicarious liability does not operate in this context. (Katz Mem. at 10-11.)

Plaintiff filed his Memorandum in Opposition to Defendant Katz's Motion to Dismiss on October 15, 2020 (Pl.'s Mem. in Opp'n to Def. Katz's Mot. to Dismiss ("Pl. Katz Resp.") (ECF No. 22)), and Col. Katz filed his Reply on October 21, 2020 (Reply Mem. in Supp. of Mot. to Dismiss Am. Compl. ("Katz Reply") (ECF No. 23)), rendering Katz's Motion now ripe for review.

### D.  Painter's Motion to Dismiss

Separately from Col. Katz, on September 30, 2020, Painter filed a Motion to Dismiss (ECF No. 17). In support of his Motion, Painter argues that qualified immunity protects him from Plaintiff's claims. (Painter Mem. at 7-13.) As a threshold matter, Painter maintains that he did not use excessive force in arresting Plaintiff. (Painter Mem. at 8-13.) On that front, Painter submits that an analysis of the *Graham* factors shows that his use of force here proved objectively reasonable, especially in light of what he views as Plaintiff's noncompliance with multiple directives to exit the vehicle. (Painter Mem. at 8-13.) In any event, Painter claims the protection of qualified immunity, because "at the time of this traffic stop, in March 2019, there was no controlling case holding that a law enforcement officer cannot use physical force to remove a suspect from a vehicle following a legally justified traffic stop for a violation of state law and the occupant's repeated refusal to exist the vehicle despite multiple lawful orders to do so." (Reply Mem. in Supp. of Mot. to Dismiss Officer Gordon J. Painter ("Painter Reply") (ECF No. 26) at 9.)) Finally, Painter moves for dismissal of Counts II (false arrest), V (false imprisonment), VI (unlawful search) and VII (malicious prosecution) on the grounds that the

7

odor of marijuana gave rise to probable cause justifying Plaintiff's arrest. (Painter Mem. at 13-17.)

Plaintiff filed his Memorandum in Opposition to Def. Painter's Motion to Dismiss on October 15, 2020 (Pl.'s Mem. in Opp'n to Def. Painter's Mot. to Dismiss ("Pl. Painter Resp.") (ECF No. 21)), and Painter filed his Reply on October 21, 2020 ("Painter Reply"), rendering Painter's Motion now ripe for review.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable."

*Id.* at 555, 570.  Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability.  *Id.* at 557.  And the facts alleged must be sufficient to "state all the elements of [any] claim[s]."  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

## III.   ANALYSIS

### A.   Plaintiff's Amended Complaint Fails to Plausibly Allege a Claim Upon Which Relief Could be Granted with Respect to Col. Katz.

#### 1.   *Plaintiff's Amended Complaint Does Not Plausibly Allege Official Capacity Claims Against Col. Katz.*

As mentioned, Plaintiff brings both official and individual capacity claims against Col. Katz.  (Am. Compl. ¶ 12.)  To that end, Plaintiff relies on Painter's motion to suppress testimony that the Chesterfield Police Department "under the command of Chief of Police [Col. Katz]" "taught" Painter the use of force that he employed during this incident.[4]  (Am. Compl. ¶ 22; Oct. 8 Transcript, at 14:8-25, 15:1-10.)  In response, Col. Katz argues that Plaintiff's allegations fail to establish an official policy or custom pursuant to which Painter committed the constitutional violations alleged here.  (Katz Mem. at 3-8.)  The Court agrees with Col. Katz.

Section 1983 official capacity claims operate against the locality, and not against the individual official named in the complaint.  *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-

---

[4]   The Court uses this fact to analyze the official capacity claims, because it constitutes the only fact from the Amended Complaint that arguably supports a municipal liability claim.  In his Opposition to Katz's Motion to Dismiss, Plaintiff does not develop any argument on the issue, but instead flatly asserts that official-capacity suits are not "per se barred."  (Pl. Katz Resp. at 5.) Of course, the issue presented here concerns whether the Amended Complaint plausibly alleges a municipal liability claim, not whether municipal liability claims are per se barred.

capacity suit is, in all respects other than name, to be treated as a suit against the entity."). As such, to recover against a locality in a § 1983 action, a plaintiff must establish that the locality itself acted as the "moving force" behind the constitutional deprivation at issue. *Id.* at 166 (citing *Polk Cty v. Dodson*, 454 U.S. 312, 326 (1981)). To make that showing, a plaintiff must demonstrate that the alleged deprivation resulted from an official policy or custom of the locality. *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).

In turn, an unconstitutional policy or custom that supplies § 1983 municipal liability can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or, (4) through a practice that proves so "persistent and widespread" as to constitute a "custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). Although Plaintiff's theory of liability remains unclear (given that he offered no argument on the issue), Plaintiff presumably relies on the second and third bases delineated above — i.e., policymaker liability and failure to properly train. However, the Amended Complaint does not plausibly allege either theory.

Policymaker liability arises when an unconstitutional policy results from "a deliberate choice to follow a course of action [ ] made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."[5] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). When the policy itself does not prove

---

[5]      The Court assumes — without deciding — that Col. Katz constitutes an individual with policymaking authority.

manifestly unconstitutional, the plaintiff must show an "affirmative link" between the policy and

the constitutional violation alleged. *Spell v. McDaniel*, 824 F.2d 1380, 1387-88 (4th Cir. 1987).

In short, a plaintiff must generally show that the asserted policy or custom and the constitutional

injury complained of share a causal connection that satisfies tort principles of proximate and but-

for causation. *Id.* at 1388. Importantly, "[p]roof of a single incident of unconstitutional activity

is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that

it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to

a municipal policymaker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Additionally, a failure to properly train employees may serve as the basis for liability

when such failure amounts to deliberate indifference to the constitutional rights of persons

coming into contact with those employees. *City of Canton v. Harris*, 489 U.S. 378, 388-89

(1989). The Supreme Court in *Connick v. Thompson* set forth the rigid standards that apply to

such a claim:

> Deliberate indifference is a stringent standard of fault, requiring proof that a
> municipal actor disregarded a known or obvious consequence of his action.
> Thus, when city policymakers are on actual or constructive notice that a
> particular omission in their training program causes city employees to violate
> citizens' constitutional rights, the city may be deemed deliberately indifferent
> if the policymakers choose to retain that program. The city's policy of inaction
> in light of notice that its program will cause constitutional violations is the
> functional equivalent of a decision by the city itself to violate the Constitution.

563 U.S. 51, 61 (2011) (internal citations and quotation marks omitted). "A pattern of similar

constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate

deliberate indifference for purposes of failure to train. . . . Without notice that a course of

training is deficient in a particular respect, decisionmakers can hardly be said to have

deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at

62 (quoting *Bryan City*, 520 U.S. at 409). Only in the rarest of circumstances may "the

11

unconstitutional consequences of failing to train . . . be so patently obvious that a city could be

liable under § 1983 without proof of a pre-existing pattern of violations." *Id.* at 64.

Additionally, the Fourth Circuit has cautioned that a failure to train claim must point to specific

training deficiencies that make a "specific violation almost bound to happen, sooner or later,

rather than merely likely to happen in the long run." *Spell*, 824 F.2d at 1390.

 The allegations against Col. Katz fail to meet these standards.  Specifically, Plaintiff has

not set forth allegations showing a causal connection between the alleged unconstitutional policy

or custom — i.e., the use of a close-handed strike as a distraction technique — and the

constitutional injury that he sustained.[6]  For instance, Plaintiff has not alleged facts showing that

the Chesterfield County Police Department implemented a manifestly unconstitutional policy of

employing excessive force whenever this specific factual context arose.  Additionally, Plaintiff

fails to allege a pre-existing pattern of constitutional violations that made the injury to Plaintiff

"almost bound to happen." *Green v. Mills*, 2020 WL 2850177, at *9-14 (E.D. Va. June 2, 2020)

("Because [the plaintiff] has only alleged facts pertaining to [the incident at bar], [the plaintiff]

has not alleged sufficient plausible factual allegations to undergird a municipal policy or custom

necessary to establish a municipality liability claim.").  Instead, Plaintiff merely alleges that

Painter "stated that the force he used during the incident was taught to him by the Chesterfield

Police Department under the command of" Col. Katz.  (Am. Compl. ¶ 22.)  But Painter's

testimony that his general training included instruction on the use of a close-handed strike does

not establish the necessary causal link between that training and Painter's decision to use force

under the facts presented by this case.  Plaintiff attempts to use a single incident — the one now

---

[6] Because Plaintiff has so clearly failed to allege causation, the Court need not decide
whether the policy or custom at issue here constituted an unconstitutional policy or custom for
municipal liability purposes.

before the Court — as a basis to hold Chesterfield County liable for Painter's conduct. That theory essentially relies on respondeat superior principles of liability, which the relevant decisional law expressly prohibits. *See Carter*, 164 F.3d at 218 ("[N]o municipality can be held liable under § 1983 on a respondeat superior theory.") (internal quotation marks omitted). Therefore, the Court must dismiss without prejudice the § 1983 official capacity claims against Col. Katz.

### 2. *Plaintiff's Amended Complaint Does Not Plausibly Allege Individual Capacity Claims Against Col. Katz.*

Plaintiff also asserts individual capacity claims against Col. Katz. Although Plaintiff does not specify his theory of individual liability against Col. Katz, the Court will assume that Plaintiff asserts a supervisory liability claim, given that Plaintiff does not allege that Col. Katz played a personal role in the incident.[7]

Plaintiff claims that a "causal connection, an improper policy, a direction of subordinate, and knowledge of a history of widespread abuse exists in this case. Each cause of action states that Plaintiff's injuries are the direct result of Defendant Painter's actions. On October 8, 2019, Defendant Painter testified that the 'technique' used against Plaintiff was taught to him by the Chesterfield Police Department." (Pl. Katz Resp. at 4.) Plaintiff then promises that his "allegations will also be supported by evidence demonstrating Defendant Katz's knowledge of Defendant Painter's history of abuse. . . ." (Pl. Katz Resp. at 5.)

However, Plaintiff's reliance on allegations that his injuries directly resulted from Painter's actions (and his promise that his allegations "will . . . be supported") prove wholly

---

[7]     In his Opposition to Katz's Motion to Dismiss, Plaintiff relies on Eleventh Circuit caselaw in reciting the standards for supervisory liability. (Pl. Katz Resp. at 4.) Those standards differ from the standards developed by the Fourth Circuit. *Compare Gonzalez v. Reno*, 325 F.3d 1228, 1234-35 (11th Cir. 2003) *with Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

unavailing. Indeed, under federal pleading standards, a plaintiff must allege actual facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Stripped to its essence, Plaintiff's individual capacity claims and official capacity claims rely on the same factual basis — i.e., Painter's motion to suppress testimony that the Chesterfield Police Department taught him to use the closed-handed strike that he used against Plaintiff in March 2019.

To state a claim for supervisory liability under § 1983, a plaintiff must plead facts showing: "(1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that poses a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw*, 13 F.3d at 799. "To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff." *Id.*

Simply put, the Amended Complaint does not contain any factual allegations that plausibly allege a supervisory liability claim. Specifically, Plaintiff does not allege facts showing that: Painter engaged in conduct posing a pervasive and unreasonable risk to citizens like Plaintiff; Col. Katz had actual or constructive knowledge of that conduct; Col. Katz responded with deliberate indifference in the face of that knowledge; or that an affirmative causal link existed between Col. Katz's inaction and the particular injury that Plaintiff suffered. Indeed, Plaintiff cannot even satisfy the first element, as the Amended Complaint proves barren

14

of any factual allegation that Painter had engaged in unconstitutional conduct other than the conduct at issue here. As such, the Court dismisses without prejudice all § 1983 individual capacity claims against Col. Katz. *Green v. Mills*, 2020 WL 2850177, at *7-8 (dismissing supervisory liability count, because the plaintiff did not allege sufficient facts establishing widespread conduct or at least "several different occasions") (citing *Shaw*, 13 F.3d at 799).

### 3.    *Plaintiff's Amended Complaint Does Not Plausibly Allege State Law Claims Against Col. Katz.*

Having dismissed all federal claims against Col. Katz, the Court now turns to the state law claims asserted against him in the Amended Complaint. Col. Katz argues that the state law claims fail insofar as they assert official capacity claims, because Chesterfield County, as a subdivision of the Commonwealth, enjoys immunity from tort liability. (Katz Mem. at 10.) Moreover, Col. Katz maintains that to the extent that the state law claims assert individual capacity claims, such claims fail because Col. Katz did not actually participate in the alleged tortious conduct. (Katz. Mem. at 10-11.) Plaintiff did not respond to Col. Katz's arguments. (*See generally* Pl. Katz Resp.).

"It is well established that the doctrine of sovereign immunity protects municipalities from tort liability arising from the exercise of governmental functions." *Niese v. City of Alexandria*, 564 S.E.2d 127, 132 (Va. 2002). "It is plain that [the protection of sovereign immunity] extends to municipalities in the exercise of their governmental functions . . . one of which is certainly the maintenance of a police force." *Carter v. Morris*, 164 F.3d 215, 221 (4th Cir. 1999). Accordingly, sovereign immunity bars Plaintiff's state law claims (Counts III, IV, V, VI, VII) to the extent that they assert claims against Col. Katz in his official capacity. Finally, given that Plaintiff has not alleged facts showing that Col. Katz actually participated in the March 2019 incident, or that Col. Katz had notice of other unlawful conduct by Painter, the

15

Court can ascertain no basis in law to hold Col. Katz personally liable on the state law claims. And, indeed, Plaintiff posits none.

Accordingly, because the Amended Complaint does not plausibly allege either official or individual capacity claims against Col. Katz, the Court hereby GRANTS Col. Katz's motion (ECF No. 15), and dismisses him from this action.

### B. Probable Cause Existed to Arrest Plaintiff and Search his Vehicle, Thus Defeating Claims for False Arrest, False Imprisonment, Unlawful Search, and Malicious Prosecution[8]

As mentioned, Plaintiff asserts claims for False Arrest (Count II), False Imprisonment (Count V), Unlawful Search (Count VI) and Malicious Prosecution (Count VII). Painter argues that the viability of these counts hinges on whether probable cause existed to search Plaintiff's vehicle and arrest him for possession of marijuana. (Painter Mem. at 13-15.) Given as much, Painter argues that, because he detected the odor of marijuana upon approaching Plaintiff's vehicle, probable cause justified the search and arrest at issue here. (Painter Mem. at 13-15.) In response, Plaintiff draws a distinction between the search of his vehicle and the actual arrest of his person. (Pl. Painter Resp. at 10-11.) Conceding that "probable cause to search a vehicle can be manifested by the odors of illegal substances," Plaintiff nonetheless maintains that "an unlawful seizure occurred long before a search was executed by" Painter. (Pl. Painter Resp. at 10.) In short, Plaintiff appears to argue that Painter arrested him prematurely — i.e., before the odor of marijuana actually supplied probable cause for the arrest. (Pl. Painter Resp. at 7) ("Rather than conducting an investigation by asking [Plaintiff] questions about any possible odor, or asking for permission to search [Plaintiff's] vehicle, or engaging his K-9 . . . to do a

---

[8] In light of the Court's ruling on the probable cause issue, the Court need not address Painter's argument that he did not act with malice in prosecuting Plaintiff. (Painter Mem. at 15-17.)

sweep of the vehicle, Officer Painter chose to instead strike [Plaintiff] in the face.").)  The Court

rejects Plaintiff's argument.

To start, the Court observes that Counts II, V, VI and VII all rely on the absence of

probable cause.  *See, e.g.*, *Street v. Surdyka*, 492 F.2d 368, 371-73 (4th Cir. 1974) ("[T]here is no

cause of action for 'false arrest' under section 1983 unless the arresting officer lacked probable

cause"); *Yeatts v. Minton*, 177 S.E.2d 646, 649 (Va. 1970) (entering judgment for the defendant

on a false imprisonment claim, because when "an officer observes acts that give him reasonable

cause to believe a misdemeanor has been committed in his presence, an arrest is lawful"); *Carter

v. Commonwealth*, 163 S.E.2d 589, 592 (Va. 1968) (holding that Virginia Code § 19.1-88 — the

predecessor to § 19.2-59 — "proscribes only an unreasonable search without a warrant"); *Lewis

v. Kei*, 708 S.E.2d 884, 889-90 (Va. 2011) ("In an action for malicious prosecution, the plaintiff

must prove four elements:  that the prosecution was (1) malicious; (2) instituted by or with the

cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not

unfavorable to the plaintiff.").   Accordingly, should the Court find that probable cause

undergirded Painter's arrest of Plaintiff and subsequent search of the vehicle, the Court must

dismiss Counts II, V, VI and VII.

The relevant legal framework flows from the Fourth Amendment's prohibition on

unreasonable searches and seizures.  U.S. Const. amend. IV.  "Under the Fourth Amendment, if

supported by probable cause, an officer may make a warrantless arrest of an individual in a

public place."  *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004) (citations omitted).

Probable cause requires "facts and circumstances within the officer's knowledge that are

sufficient to warrant a prudent person, or one of reasonable caution, in believing . . . that the

suspect has committed, is committing, or is about to commit an offense."  *Id.* (citing *Michigan v.

*DeFillippo*, 443 U.S. 31, 37 (1979)).  With respect to automobiles, the Supreme Court long ago

established that police officers may search an automobile without a warrant when they have

probable cause to believe that the vehicle is transporting contraband.  *See generally Carroll v.*

*United States*, 267 U.S. 132 (1925).  Relevant here, "the odor of marijuana alone can provide

probable cause to believe that marijuana is present in a particular place." *Humphries*, 372 F.3d

at 658.  Moreover, "if an officer smells the odor of marijuana in circumstances where the officer

can localize its source to a person, the officer has probable cause to believe that the person has

committed or is committing the crime of possession of marijuana." *Id.*  As such, the officer then

has probable cause to arrest that person. *Id.*

Here, Painter conducted a traffic stop of Plaintiff's vehicle after having observed the

vehicle's broken headlight.  (Am. Compl ¶¶ 16-17; Body Cam. at 04:28-04:33.)  Upon

approaching the vehicle to retrieve Plaintiff's information, Painter detected the odor of

marijuana.  (Oct. 8 Tr., at 5:18-20, 15:20-25.))  Indeed, after he extracted Plaintiff from the

vehicle — but before he searched it — Painter advised Plaintiff that he had ordered Plaintiff out

of the vehicle due to the odor of marijuana.  (Body Cam. at 05:12-05:50.)  Thus, Painter lawfully

initiated the traffic stop, because his observation of the defective headlight gave rise to

reasonable suspicion that a "traffic or equipment violation has occurred or is occurring." *Veney*

*v. Ojeda*, 321 F. Supp. 2d 733, 739 (E.D. Va. 2004).  Moreover, the facts presented by the

Amended Complaint and the exhibits incorporated thereto plainly establish that Painter smelled

the odor of marijuana when he approached Plaintiff's vehicle and that he had probable cause to

arrest Plaintiff and search the vehicle as a result.[9] *United States v. Richardson*, 801 F. App'x

---

[9]     At the time of the March 2019 incident, Virginia law criminalized the possession of
marijuana as a misdemeanor.  Virginia Code Ann. § 18.2-250.1 (2018).

157, 158 (4th Cir. 2020) ("[W]e have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place."); *Humphries*, 372 F.3d at 658. And, because no other person except Plaintiff occupied the vehicle, Painter could localize the source of the marijuana. As such, Plaintiff's reliance on the distinction between the arrest and the search proves unavailing.

Because the circumstances presented here show that Painter had probable cause to arrest Plaintiff and search the vehicle, the Court hereby GRANTS Painter's motion (ECF No. 17) to the extent that it seeks dismissal of Counts II (False Arrest), V (False Imprisonment), VI (Unlawful Search) and VII (Malicious Prosecution).

### C.    Plaintiff has Plausibly Alleged Claims for Excessive Force, Assault and Battery Against Painter

#### 1.    *Plaintiff Plausibly Alleges that Painter Used Excessive Force.*

The remaining claims in Plaintiff's Amended Complaint assert causes of action for Excessive Force (Count I), Assault (Count III) and Battery (Count IV). On this front, Plaintiff contends that qualified immunity does not shield Painter from liability. (Pl. Painter Resp. at 2-10.) Specifically, Plaintiff argues that the *Graham* factors weigh in his favor, because Painter suspected him of a non-serious crime, he remained calm and cooperative during the encounter and he did not actively resist or evade arrest. (Pl. Painter Resp. at 5-9.) In particular, Plaintiff emphasizes that Painter afforded him only three seconds to exit his vehicle before Painter blocked Plaintiff's exit by situating himself between the opened driver's side door and Plaintiff's person. (Pl. Painter Resp. at 8.) Finally, Plaintiff highlights his calm demeanor, specifically noting that his hands remained visible and that he made no threatening movements during the traffic stop. (Pl. Painter Resp. at 6-8.)

Conversely, Painter argues that qualified immunity precludes Plaintiff's claims, because Painter did not commit a constitutional violation at all, and, in any event, he acted as an objectively reasonable officer under the circumstances. (Painter Mem. at 8-13; Painter Reply at 6-10.) Painter analyzes the *Graham* factors differently, arguing that the severity of the crime weighs in his favor as he had probable cause to arrest Plaintiff for three separate crimes — i.e., defective equipment, possession of marijuana and obstruction of justice. (Painter Reply at 2-3.) Further, Painter argues that Plaintiff posed an immediate threat to his safety, because Painter "had no way of knowing whether Plaintiff had access to any weapons, either in the fanny pack he was wearing across his chest or potentially stashed in the vehicle." (Painter Reply at 3-4.) Finally, Painter contends that Plaintiff actively resisted arrest by failing to comply with multiple orders to exit the vehicle. (Painter Reply at 4-5.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Livingston v. Kehagias*, 803 F. App'x 673, 678 (4th Cir. 2020). In determining whether qualified immunity applies, the Supreme Court has established a two-step inquiry. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "At the first step, the court asks whether a constitutional violation occurred, viewing the facts and drawing the reasonable inferences in the light most favorable to the plaintiff." *Livingston*, 803 F. App'x at 678 (internal quotation marks omitted). "At the second, the court considers whether 'the right violated was clearly established' at the time [of the defendant's alleged misconduct]." *Id.* Although the Supreme Court previously mandated that courts follow these steps in sequential order, in *Pearson*, the Court held that "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be

20

regarded as mandatory." *Pearson*, 555 U.S. at 236.  Thus, "judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Id.*

Here, the Court must first determine whether Plaintiff plausibly alleges that Painter committed a constitutional violation by effectuating an arrest through the use of excessive force. To that end, the Court must analyze the force used against Plaintiff in light of the three factors set forth by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989).  Specifically, the Court must evaluate:  (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and, (3) whether the suspect actively resisted arrest or attempted to evade arrest by flight.  *Graham*, 490 U.S. at 396-97.  Because the claim arises under the Fourth Amendment, the Court must analyze it under a standard of objective reasonableness.  *Veney*, 321 F. Supp. 2d at 742 (citing *Graham*, 490 U.S. at 395-97). "[A] court assessing the reasonableness of an officer's exertion of force must consider the facts and circumstances of the case from the perspective of a reasonable officer at the time of the incident, while keeping in mind that law enforcement officers often must make split-second judgments under tense and uncertain circumstances." *Id.*

Construing the facts in a light most favorable to Plaintiff, the Court finds that an analysis of the *Graham* factors weighs in Plaintiff's favor.  First, the severity of the crime for which Painter arrested Plaintiff constitutes, at worst, a misdemeanor offense.  The Fourth Circuit has repeatedly weighed the first factor in favor of a plaintiff who stood suspected of only a non-violent, misdemeanor crime.  *See, e.g.*, *Hupp v. Cook*, 931 F.3d 307, 322 (4th Cir. 2019) (finding that obstruction, a misdemeanor under West Virginia law, constituted a minor offense for

purposes of excessive force analysis).[10]  Indeed, even though Painter had probable cause to believe that Plaintiff possessed marijuana and had a defective headlight, the former offense constituted a non-violent misdemeanor, and the latter constituted a mere traffic violation. Virginia Code § 18.2-250.1 (2018); § 46.2-1003 (2018).

Yet Painter argues that the severity of the crime factor tilts in his favor, because Plaintiff's noncompliance with four lawful orders to exit the vehicle exacerbated the already significant danger that officers face during traffic stops. (Painter Reply at 2-3 (citing *Long*, 463 U.S. 1032).)  However, Painter's presupposition that Plaintiff did not comply with his orders relies on interpreting the facts in Painter's favor.  Construing the facts in Plaintiff's favor — as the Court must do at this stage of the litigation — reveals a plausible argument that the relevant moments in the traffic encounter constituted one fluid, rapidly evolving situation in which Painter too quickly resorted to striking Plaintiff in the face.

Specifically, after Painter issued the first order to exit the vehicle, he immediately opened the driver's side door and situated himself between the door and Plaintiff's person. (Am. Compl. ¶ 16; Body Cam. at 04:25-04:37.)  While arguably blocking Plaintiff's exit from the vehicle, Painter then rapidly issued three more commands and grabbed Plaintiff's arm. (Am. Compl. ¶ 17; Body Cam. at 04:28-04:40.)  Before Plaintiff could finish asking Painter to release his arm, Painter executed a closed-handed strike to Plaintiff's face. (Am. Compl. ¶ 17; Body Cam. at

---

[10]     As *Hupp* demonstrates, even if Painter had probable cause to believe that Plaintiff committed obstruction of justice, this factor would still weigh in Plaintiff's favor as the relevant subsection of the statute makes obstruction a misdemeanor offense.  Virginia Code § 18.2-460A. In any event, Painter's argument that Plaintiff committed obstruction proves dubious, as Virginia law generally requires "opposition or resistance by direct action" for an obstruction conviction. *Rogers v. Pendleton*, 249 F.3d 279, 291 (4th Cir. 2001) ("Obstruction of justice does not occur when a person fails to cooperate fully with an officer or when the person's conduct merely renders the officer's task more difficult . . . .") (internal quotation marks and citations omitted).

04:39-04:41.)  In total, fifteen (15) seconds elapsed between Painter's first command to exit the vehicle and the use of force now at issue.  (Body Cam. at 04:26-04:41.)  Although Plaintiff appeared not to comply with Painter's orders during those fifteen seconds, given that the crimes under investigation proved non-serious and construing the facts in Plaintiff's favor, Plaintiff plausibly alleges that Painter used too much force too quickly.

Even setting that analysis aside, the Court finds inapposite Painter's reliance on the Supreme Court's recognition that traffic stops inhere with danger.  (Painter Reply at 3 (citing *Long*, 463 U.S. at 1047; *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977)).)  In *Long*, the Supreme Court expanded the scope of the protective sweep authorized by *Terry*.  *Long*, 463 U.S. at 1047-1051.  Specifically, the Court held that *Terry* "allow[s] the police to conduct an area search of the passenger compartment to uncover weapons, as long as they possess an articulable and objectively reasonable belief that the suspect is potentially dangerous."  *Id.* at 1051.  That conclusion flowed from the Court's analysis that a protective sweep of an automobile, when supported by reasonable suspicion that the suspect poses a danger to the officers, proves a reasonable governmental intrusion in light of the dangers posed by a traffic stop.  *Id.* at 1049-1051.  Likewise, in *Mimms*, the Court held that police may order lawfully stopped drivers out of their cars under a similar balancing analysis.  *Mimms*, 434 U.S. at 111-12.  In short, both of those cases called upon the Supreme Court to decide whether officer safety outweighs limited and specifically justified governmental intrusions.  They did not establish the narrow proposition that any offense associated with a traffic stop constitutes a severe crime within the meaning of an excessive force analysis.

Turning to the second factor, the Court does not find an objectively reasonable basis to believe that Plaintiff posed an immediate threat to Painter's safety.  For one, Plaintiff proved

responsive to each question that Painter posed to him. When Painter asked for Plaintiff's information, Plaintiff promptly searched for it and, upon finding the relevant documents, surrendered them to Painter. (Am. Compl. ¶ 14, Body Cam. at 00:58-04:12.) When Painter asked Plaintiff where he was heading and where his home was located, Plaintiff answered Painter's questions without pause. (Am. Compl. ¶ 15; Body Cam. at 01:05-01:40.) And, when Painter processed Plaintiff's information, he apparently did not find anything amiss. (Am. Compl. ¶ 5.) Finally, preceding Painter's use of force, Plaintiff sat motionless and kept his hands visible. (Body Cam. at 04:25-04:41.) With these facts in mind, the Court weighs the second factor in Plaintiff's favor.[11] *Veney*, 321 F. Supp. at 743 (weighing second factor in the plaintiff's favor when plaintiff adduced evidence that he "did not at any time reach for or appear to reach for a weapon or threaten the officers in any way.").

Finally, for similar reasons stated above, the Court weighs the third factor in Plaintiff's favor. Construing the facts favorably to Plaintiff, Plaintiff did not actively resist or evade arrest. Instead, Plaintiff sat motionless, with his hands visible. Although Plaintiff did not immediately comply with Painter's orders, neither did he undertake any threatening or evasive movements. Accordingly, because the Court finds that the *Graham* factors weigh in Plaintiff's favor, the

---

[11]     Painter resists this conclusion by pointing to things that he *did not* know during the interaction. (Painter Mem. at 10-11) ("Painter did not know whether Plaintiff had any weapons in the vehicle" or whether "Plaintiff was a flight risk" or "would use his car as a weapon.") While the Court does not downplay the serious risks that confront police officers each day, the general absence of knowledge concomitant with any given encounter does not supply an objectively reasonable basis to believe a particular suspect poses an immediate threat to the officer's safety.

Court holds that Plaintiff plausibly alleges that Painter used excessive force during the March 2019 traffic stop.[12]

## 2. Plaintiff Plausibly Alleges that Painter's Closed-Handed Strike to Plaintiff's Face Violated Clearly Established Law

Having determined that Plaintiff plausibly alleges that Painter used excessive force, the Court must now determine whether Painter's use of force violated clearly established law. "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotations, alterations and citations omitted). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The "clearly established" standard balances a plaintiff's interest in vindicating her constitutional rights with the interest of government officials in "reasonably . . . anticipat[ing] when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). Accordingly, "the right allegedly violated must be established not as a broad general proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." *Reichle*, 566 U.S. at 665 (internal quotations and citations omitted).

Qualified immunity does not require that "the very action in question has previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Indeed, the Supreme Court has held that "a general constitutional rule already identified in the decisional law may apply with obvious

---

[12] Painter correctly observes that the Fourth Circuit also considers the extent of the plaintiff's injury when analyzing an excessive force claim. (Painter Mem. at 9; Painter Reply at 5) (citing *Jones v. Buchanan*, 325 F.3d 520, 527-28 (4th Cir. 2003).) Painter argues that this factor weighs in his favor, because Plaintiff has not alleged severe injury. (Painter Reply at 5.) This argument carries little force here, however, as the *Graham* factors favor Plaintiff, and serious injury "is [not] a *sine qua non* of a constitutional tort." *Veney*, 321 F. Supp. 2d at 743.

clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Anderson*, 483 U.S. at 640 (internal quotations and citations omitted). Thus, "the salient question" becomes whether the state of the law at the time of the alleged conduct "gave [the government official defendant(s)] fair warning that their alleged [conduct] was unconstitutional." *Hope*, 536 U.S. at 741. In the final analysis, a plaintiff need not find a "case directly on point" to defeat a claim of qualified immunity, but must instead show that it "would be clear to a reasonable officer that his or her conduct was unlawful in the particular situation that he or she confronted." *Livingston*, 803 F. App'x at 679 (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

Distilled to its essence, the question now presented remains whether a reasonable officer would understand that striking a suspect in the face with a closed fist constitutes excessive force under the facts presented here. On this question, Painter maintains that "existing controlling precedent and case law from district courts in the Fourth Circuit would have given Officer Painter reason to believe he was fully justified in using that amount of force to remove Plaintiff from the vehicle." (Painter Reply at 9.) The Court disagrees.

In *Veney v. Ojeda*, the court analyzed an excessive force case in a similar factual context. 321 F. Supp. 2d 733, 735-737 (E.D. Va. 2004). There, a police officer observed a vehicle speeding and initiated a traffic stop. *Id.* at 735. The driver of the vehicle pulled over and the officer called for backup after realizing that four individuals occupied the vehicle. *Id.* After backup arrived, the officer approached the vehicle and advised the driver of the speeding violation. *Id.* at 736. Meanwhile, the officer smelled a faint odor of marijuana and ordered the driver out of the vehicle. *Id.* Upon questioning, the driver denied having any drugs or weapons in the vehicle, but consented to a search. *Id.* The officer then ordered the three passengers to

26

exit the vehicle, and one of them, the plaintiff, appeared to reach under the floorboard before

exiting.  *Id.*  A backup officer (the defendant) then ordered the plaintiff to the rear of the vehicle

so that the officer could conduct a pat-down search.  *Id.*  According to the plaintiff, the defendant

then forcefully threw him to the ground, causing injury to his hand.  *Id.*  Plaintiff maintained that

he cooperated fully with the officers and did nothing to provoke them.  *Id.*

      In denying qualified immunity to the defendant-officer, the court held that "a reasonable

officer in [the defendant's] shoes could not have believed that [defendant's] exertion of force

was necessary or reasonable.  This is so because [according to the plaintiff], the plaintiff fully

cooperated with [the officers'] instructions in exiting the vehicle and submitting to a pat-down

search and did not reach for, or appear to reach for, a weapon."  *Id.* at 744.  In short, the court

denied qualified immunity, because the plaintiff set forth facts showing that despite his

cooperative deportment, the officers slammed him to the ground while effecting his arrest.

      Likewise, the facts alleged in the Amended Complaint, together with the incident as

depicted by Painter's body cam footage, reveal that Plaintiff proved docile during the encounter.

As mentioned, Plaintiff answered all of Painter's questions and surrendered his information

when ordered to do so.  Critically, even if Plaintiff did not immediately comply with Painter's

order to exit the vehicle, he did not "reach for, or appear to reach for, a weapon," but instead sat

motionless with his hands visible.  (Body Cam. at 04:25-04:41.)  Construing these facts in a light

most favorable to Plaintiff, a reasonable officer in Painter's shoes would not deem it reasonable

to deliver a close-handed strike to Plaintiff's face.

      Finally, the cases that Painter relies on do not provide the support that he seeks.

Specifically, those cases analyze the *Mimms/Long* issue (which is tangential to the question

presented here, for the reasons articulated above), or otherwise deal with significantly milder

uses of force. *See, e.g., Cleary v. Green*, 2008 WL 4900548, at *5-6 (D. Md. Nov. 6, 2008)
(granting defendant summary judgment on excessive force claim when the plaintiff "willfully
disobeyed" orders to exit the vehicle, and the officers "did not punch or slap [the plaintiff] or
throw her to the ground"); *Coffey v. Morris*, 401 F. Supp. 2d 542, 543, 548 (W.D. Va. 2005)
(granting defendant summary judgment on excessive force claim when the force at issue
constituted grabbing the plaintiff's left arm and handcuffing her).

Accordingly, for the reasons provided above, the Court DENIES Painter's motion (ECF
No. 17) to the extent that it seeks dismissal of Count I of the Amended Complaint.

### E.     Plaintiff Plausibly Alleges State Law Claims for Assault and Battery Against Painter.

As Painter acknowledges, "Virginia common law claims that arise from the officer's use
of force, such as assault and battery, are 'subsumed within the federal excessive force claim.'"
(Painter Mem. at 9) (citing *Rowland v. Perry*, 41 F.3d 167, 174 (4th Cir. 1994).)  As such, for the
same reasons that the Court denies Painter's motion to dismiss Count I, the Court DENIES
Painter's motion (ECF No. 17) to the extent that it seeks dismissal of Counts III (Assault) and IV
(Battery).

## IV.     CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Col. Katz's motion (ECF No.
15), and DISMISSES WITHOUT PREJUDICE all claims against him. Further, the Court hereby
GRANTS IN PART and DENIES IN PART Painter's Motion (ECF No. 17).  The Court
DISMISSES WITH PREJUDICE Count II (False Arrest), Count V (False Imprisonment), Count
VI (Unlawful Search, in violation of Virginia Code § 19.2-59) and Count VII (Malicious
Prosecution) of Plaintiff's Amended Complaint (ECF No. 13).  However, the Court DENIES

Painter's Motion (ECF No. 17) to the extent that it seeks dismissal of Count I (Excessive Force), Count III (Assault), and Count IV (Battery). In short, Plaintiff may only proceed against Defendant Gordon J. Painter on Counts I, III and IV of the Amended Complaint (ECF No. 13).

An appropriate order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

_____/s/_____

David J. Novak
United States District Judge

Richmond, Virginia
Date: December 21, 2020